GARRETT, TRUSTEE, v. THE BURLINGTON PLOW CO. ET AL.

1. **Corporations**: INDEBTEDNESS OF INSOLVENT CORPORATION TO DI-
RECTORS BEYOND PRESCRIBED LIMIT: PREFERENCE: VALIDITY. A
debt of a corporation beyond the limit prescribed by its charter is not
invalid; and where such a debt was held by directors of the corporation,
and they in good faith took a mortgage on the property of the corpora-
tion for security, thus obtaining a preference over other creditors, they
may enforce such security the same as any other creditor, even though
they participated in the management of the corporate business in such a
way as to permit the accumulation of a debt beyond the allowed limit,
and though the corporation was insolvent when their mortgage was
taken.

2. ———: CORPORATION NOTE INDORSED BY DIRECTORS: PRIMARY LIABIL-
ITY OF CORPORATION. Where a creditor of a corporation holds its note
secured by mortgage on its property, and also indorsed by its directors,
there is no principle of law which will compel him to proceed against the
indorsers, and surrender to other creditors the property which he holds
as security, even though the corporation be insolvent.

3. **Assignment for Benefit of Creditors**: TRANSACTIONS NOT
AMOUNTING TO: PREFERENCES. Where an insolvent corporation
mortgaged all of its real and personal property to a trustee to secure
certain specified debts, and pledged all of its notes and accounts to
another creditor, to secure his claim, thus encumbering all of its property,
but it was not the intention in either case to make an absolute convey-
ance of the property, *held* that, though the two transactions be regarded
as one, they did not amount to an assignment for the benefit of creditors,
which would be void because of preferences. (See cases cited in opinion.)

*Appeal from Des Moines District Court.*

WEDNESDAY, OCTOBER 6, 1886.

ACTION in chancery to foreclose a mortgage executed by
the Burlington Plow Company to plaintiff, as a trustee for
certain of its creditors, upon real estate and personal prop-
erty. There was a decree granting the relief prayed for in
plaintiff's petition. Defendants appeal.

*P. H. Smyth & Son, Poor & Baldwin, S. L. Glasgow*
and *J. T. Illick,* for appellants.

*J. C. Power* and *Newman & Blake,* for appellee.

BECK, J.—I. The questions presented in this case arise upon the ruling of the district court in sustaining a demurrer to the answers of defendants to plaintiff's petition. It therefore becomes necessary to state with particularity the pleadings in the case, especially the answers held upon the demurrer to present insufficient defenses to the action.

The petition alleges the corporate character of defendant the Burlington Plow Company, and that, being indebted by promissory notes to the Iowa State Savings Bank in the amount of $10,000, to Rubie D. Tuttle and Lauren Tuttle in sums of $7,295.93 and $6,641.81, respectively, it executed to plaintiff, as trustee, a mortgage upon real and personal property, to secure its indebtedness to these several parties. The petition prays for judgment upon the several promissory notes, and the foreclosure of the mortgage. The petition alleges that after the plow company executed the mortgage to plaintiff it made an assignment of its property, for the benefit of its creditors, to Christian Mathes, who is made a defendant to the action.

In an answer and amended answer, she pleads the following matters as defenses:

The plow company is indebted to various creditors, other than the persons for whom plaintiff is trustee, in the sum of $21,400. Its capital stock, authorized by the articles of incorporation, is $50,000, of which $25,000 was subscribed. Its indebtedness was limited by its articles of incorporation to two-thirds of the amount of its capital stock. At the time of the assignment, its indebtedness exceeded $50,000. No provision is made in the mortgage for the application of the proceeds of the sale by the mortgagor of personal property covered thereby to the payment of the debts secured; manufactured articles and material therefor being covered by the mortgage, of which the company was to retain possession. The promissory note to the savings bank was indorsed by E. D. Rand, one of the incorporators and a director of the company, who is solvent. Rubie D. Tuttle, to whom

another note is payable, is one of the incorporators, and the wife of another incorporator, S. S. Tuttle, who is secretary of the company. The other note was executed to the administrator of Lauren Tuttle, another incorporator, and father of S. S. Tuttle. Rand and S. S. Tuttle have been directors of the company since its organization, and Lauren Tuttle was a director up to the time of his death.

The directors, with knowledge of the existence of corporate debts beyond the limit prescribed by the articles of incorporation, and the insolvency of the company, and knowing that the other creditors who had given it credit in ignorance of these things were pressing their claims, caused the mortgage in suit to be executed in order to indemnify themselves. On the day after the execution of the mortgage, they transferred to the National State Bank of Burlington notes and accounts to the amount of $40,000, the proceeds of which were to be applied, first, in payment of the sum of $18,000 owed by the company to that bank, and the balance to be applied in payment of the indebtedness secured by the mortgage in suit. The claims thus transferred, and the property covered by the mortgage, constituted substantially all the property of the plow company. After the death of Lauren Tuttle, no person was chosen to fill his place in the board of directors of the incorporation.

The creditors whose claims were not secured reposed great confidence in the business character and integrity of the directors, especially of Rand, who is a man of great wealth. These directors concealed the amount of the indebtedness of the company, and the other creditors, having no knowledge on the subject, believed it was solvent, and therefore gave it credit. Two of the directors of the company are the heirs of Lauren Tuttle, deceased, and the consideration of the debt to Rubie D. Tuttle, was the property of her husband, one of the directors. She and the administrator of the estate of Lauren Tuttle had notice when the notes were executed that the indebtedness of the incorporation exceeded the limit pre-

scribed by its articles of incorporation. The money was obtained upon the note to the Iowa Savings Bank, upon the credit of the directors, who indorsed it, or guaranteed its payment.

Other matters are alleged in the answers of like import as the foregoing, tending to show that the directors acted in the execution of the mortgage for their own protection, which need not be here more specifically noticed. It is finally charged that the execution of the mortgage, and the transfer of the notes to the national bank, being a disposition of all the property of the plow company, amounts, in effect, to a general assignment of its property, with preferences to certain of the creditors, and is therefore invalid.

Plaintiff, by demurrer, assailed the answers of defendants on the ground that no defense to the action is pleaded therein.

II. It will be observed that it is not alleged in defendant's answers that either of the notes secured by the mortgage was not executed in good faith, for the full consideration shown upon its face; nor is it alleged that any fraud was practiced by either of the payees in procuring the notes. The mortgage is assailed on the ground that the payees of two of the notes were stockholders and directors in the plow company, or held such relations to the directors that their rights were no other than the rights held by the directors.

The transaction, so far as it involves the indebtedness to the Iowa State Savings Bank, is questioned upon the ground that the directors of the company are indorsers or guarantors upon the note given therefor. We are required to consider the rights of the holders of these notes separately. It may be assumed, for the purposes of the case, that the notes given to Rubie D. Tuttle, and the administrator of the estate of Lauren Tuttle, are to be regarded as though they were given to and held by a director of the company. The case, in this view, presents questions as to the rights of directors of a corporation holding its notes secured by mortgage upon its

Garrett, Trustee, v. The Burlington Plow Co. et al.

property, which were given under the circumstances recited in defendant's answers. As we have just stated, the good faith of the indebtedness of the corporation is not brought in question.

Do the facts alleged in the answer, that the holders of the notes, as directors of the company, in the management of its affairs, contracted indebtedness beyond the limit prescribed by the articles of incorporation, and caused the mortgage to be executed to secure the amount due them, defeat their security, and give other creditors a right to share in the proceeds of the property mortgaged? We do not understand counsel for defendants to claim that a debt of a corporation beyond the prescribed limits of its indebtedness is invalid, and, if held by a director of the corporation, cannot be enforced for that reason alone. It may be that a director would be answerable to stockholders or others for negligence or mismanagement of the affairs of a corporation whereby debts were contracted in excess of the limitation prescribed in the articles of incorporation; but it cannot be claimed that such a debt, for a consideration received by the corporation, cannot be enforced against it.] May a director enforce such a debt? We understand that he may become a creditor of the corporation, may advance it money, or sell it property, and obligations of the corporation executed therefor may be enforced by him. In this regard he occupies no different position from that of any other creditor; and, if the debt he holds was contracted in good faith, and there is an absence of fraud on his part, he may take security or payment, though the corporation be insolvent, and he may thereby acquire priority in the payment of his claim.

Counsel for defendants admit this proposition, with an exception in the case of the insolvency of the corporation. They insist that the directors of an insolvent corporation cannot take from it security, by mortgage or other conveyance creating a lien upon its property, even though given in

*Margin note: 1. CORPORATIONS: indebtedness of insolvent corporation to directors beyond prescribed limit: preference: validity.*

good faith, and without fraud in the transaction. We are not prepared to admit this proposition. A creditor may accept payment or security from an insolvent debtor free from any claim of other creditors. A corporation may make payment of its debts, or give its property in security therefor, just as a natural person may do. If, therefore, a director holds the indebtedness of an insolvent corporation, he may take payment or security in a good faith and honest transaction. No reason can be given why a director who holds a valid debt against his corporation may not, though it be insolvent, in a fair and honest way, take its property in security. If the property, money, or other consideration of the debt, was fairly used for the benefit of the corporation, was added to its assets, or used in its business, it would be unreasonable to hold that the director is deprived of rights and remedies held by other creditors.

It is not shown in the answer of defendants that there was any bad faith or dishonest practices on the part of the creditors for whom plaintiff is trustee, in becoming creditors of the plow company, and taking security from it. It is true that the courts will scan with care, and even with suspicion, such transactions, and demand that they be accompanied by the utmost good faith. Defendants' answers make no charge of bad faith or fraud in the creation of the debt, or the execution of the mortgage. It is averred that the directors unlawfully contracted indebtedness of the corporation in excess of the limit prescribed by its articles of incorporation. But this has nothing to do with the directors' claims in controversy. As we have before said, they may be liable to proper parties for their negligence or unlawful acts, but honest contracts made with them are not defeated thereby.

Our views above expressed are in harmony with familiar rules of the law, and are supported by the following decisions of this court: *Buell v. Buckingham*, 16 Iowa, 284; *Farmers' & Merchants' Bank of Lineville v. Wasson*, 48

Garrett, Trustee, v. The Burlington Plow Co. et al.

Id., 336; *Hallam v. Indianola Hotel Co.*, 56 Id., 178. Decisions of other courts, which need not be cited, are to the same effect.

Counsel for defendants cite two or three cases, which they claimed are in conflict with our conclusions; the more important one being *Haywood v. Lincoln Lumber Co.*, 64 Wis., 639; S. C., 26 N. W. Rep., 184. This case, and the decisions cited in it, we think do not give support to counsel's position.

III. The note held by the savings bank presents a different and less difficult question. It was not given to a director or member of the corporation. Rand and the other directors are indorsers or guarantors of the note. We know of no principle of law which will compel the bank to proceed against the indorsers or guarantors, and surrender the property it holds as security to other creditors. No bad faith or fraud on the part of the bank or the directors, touching the note and mortgage, is shown. The transaction must be presumed to be an honest and fair one. The bank was authorized to take all the security it could get, and then proceed against the principal debtor, and its property covered by the mortgage. We think this branch of the case demands no further consideration.

2. ——: corporation note indorsed by directors: primary liability of corporation.

IV. The defendants insist that the execution of the mortgage, and the transfer of the notes and accounts to the National State Bank, were made in contemplation of insolvency, and therefore must be regarded as a general assignment, which, however, is void for the reason that it gives preference to certain creditors. The mortgage involved in this action was intended by all the parties to be, as it is in fact, a security for the debts therein mentioned, and not as an absolute conveyance, whereby the assets of the corporation are distributed among its creditors. The transfer of the notes and accounts to the National State Bank was also in effect the creation of a col-

3. ASSIGN-MENT for benefit of creditors : transactions not amounting to: preferences.

lateral security, and was not an absolute payment. If these transactions be considered as one, they are not to be treated, under decisions of this court, as amounting to a general assignment for the benefit of creditors, and therefore void because of preferences. See *Cadwell's Bank v. Crittenden*, 66 Iowa, 237, and cases cited; *Jaffray v. Greenbaum*, 64 Id., 492; *Perry v. Vezina*, 63 Id., 25; *Farwell v. Jones*, Id., 316; *Carson v. Byers*, 67 Id., 606.

Other questions discussed by counsel need not be considered.

The judgment of the district court is

AFFIRMED.