SIOUX CITY TERMINAL RAILROAD & WAREHOUSE CO. et al. v. TRUST CO. OF NORTH AMERICA.[1]

(Circuit Court of Appeals, Eighth Circuit. August 2, 1897.)

No. 801.

1. EQUITY PRACTICE IN FEDERAL COURTS—PARTIES.
Under the forty-seventh equity rule, the complainant in a federal court need not join any but indispensable parties, when their joinder will oust the jurisdiction; and, if he does join them, the court may permit their dismissal, and thereupon it has the same jurisdiction in the case that it would have had if they had never been made parties. Their subsequent introduction into the suit on their own petition, even if they be citizens of the same state with complainant, will not oust the jurisdiction.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS—POWERS OF STATE CORPORATIONS.
When the highest court of a state has determined the extent of the powers and liabilities of corporations created under its laws, that decision is conclusive in the national courts in all cases involving no question of general or commercial law, and no question of right under the federal constitution.

3. CORPORATIONS—POWER TO MORTGAGE PROPERTY AND FRANCHISES.
A terminal and warehouse company organized under the Iowa statutes for the purpose, among others, of constructing and maintaining a railway, has express authority (McClain's Code, §§ 1955, 1965, 1966) to mortgage its present and future acquired property and its franchises, and this power is not lost by failure to claim it in the articles of association.

4. PERPETUITIES—IOWA STATUTE—LEASE AND MORTGAGE.
Under the statute of Iowa which provides, "Every disposition of property is void which suspends the absolute power of controlling the same for a longer

[1] Rehearing denied October 18, 1897.

period than the lives of persons then living and for twenty-one years thereafter" (McClain's Code 1888, § 3091), a mortgage in the form of a trust deed, given by a corporation to secure its bonds payable in 10 years, which recites the existence of a lease of the same property for 100 years, and transfers to the trustee all the rights of the mortgagor thereunder, is valid and binding, whether the lease and mortgage are considered separate instruments or a tripartite agreement.

5. CORPORATION—MORTGAGE—EXCESSIVE INDEBTEDNESS.

A mortgage given by a corporation to secure a debt in excess of the amount of indebtedness which it had power under the statute to contract is binding on the corporation and its subsequent creditors, where the corporation has received the full consideration for the debt secured, and the transactions were free from fraud.

6. SAME—ESTOPPEL—MORTGAGE EXECUTED BY OFFICERS.

After a corporation has negotiated and received the proceeds of bonds secured by a mortgage executed by its officers, sealed with its corporate seal, and reciting that it was executed by authority of the corporation, both the corporation and its subsequent creditors are estopped from denying the validity of the mortgage because its execution was not authorized by a proper resolution of its board of directors.

7. SAME—STATUTORY REDEMPTION—SALE IN SOLIDO.

The right of redemption and right of sale in parcels given by the statutes of Iowa (McClain's Code 1888, §§ 4317–4331) do not extend to real estate of a corporation mortgaged with its franchise to take, hold, and use property for public purposes, the chief value of which depends upon its unity and use for such purposes.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

John C. Coombs and Henry J. Taylor, for appellants.

Asa F. Call, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal by the mortgagor and subsequent lienholders from a decree of foreclosure of a first mortgage for $1,250,000 upon the property of the Sioux City Terminal Railroad & Warehouse Company of Sioux City, Iowa (hereafter called the "Terminal Company"). The appellants challenge this decree on many grounds. At the threshold of the investigation they meet the complainant with the charge that the court below had no jurisdiction of the case, because some of the defendants were citizens of the same state as the complainant. The complainant was the Trust Company of North America of Philadelphia, Pa. (hereafter called the "Trust Company"), and it was a corporation of the state of Pennsylvania. It was the trustee for the bondholders secured by the first mortgage made by the Terminal Company, and it brought this suit to foreclose that mortgage on April 17, 1894. The Terminal Company was a corporation of the state of Iowa. The Trust Company made the Terminal Company and a large number of individuals and corporations parties defendant. Among the latter were several banks which had liens upon the mortgaged property subsequent to that of the first mortgage, and which were corporations of the state of Pennsylvania. On June 19, 1894, the Terminal Company and several other defendants demurred to the bill on the ground that the circuit court had no jurisdiction because the Pennsylvania banks were

corporations of the same state as the complainant. On the next day the complainant, by leave of the court, dismissed its suit as to the Pennsylvania banks; and the court on the same day overruled the demurrers, and consolidated with this suit another which had been previously brought in that court to foreclose a second mortgage upon the property of the Terminal Company. One of the defendants in the latter suit was a citizen of the same state as one of the complainants therein. On June 24, 1895, the Pennsylvania banks presented a petition in this suit in which they alleged that they had judgment liens upon the property, and asked that they be admitted to the consolidated suit as parties defendant. Their request was granted, and the suit then went to decree.

The general rule in chancery is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have no interest in the litigation between the immediate parties, but who have an interest in the subject-matter of the litigation, which may be conveniently settled therein, may be, made parties to it. The former are termed the necessary, and the latter the proper, parties to the suit. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in parties beyond their jurisdiction by publication, has resulted in a modification of this rule, and a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party. Every indispensable party must be brought into court, or the suit will be dismissed. The complainant may join every proper party, and he must join every proper party who would have been a necessary party under the old chancery rule, unless his joinder would oust the jurisdiction of the court as to the parties before it, or unless he is incapable of being made a party by reason of his absence from the jurisdiction of the court or otherwise. If, however, such a party is incapable of being made a party, or if his joinder would oust the jurisdiction of the court as to the parties before it, the suit may proceed without him, and the decree will not affect his interests. Rev. St. §§ 737, 738; Equity Rule 47; Chadbourne's Ex'rs v. Coe, 10 U. S. App. 78, 83, 2 C. C. A. 327, 51 Fed. 479, 480, 481; Shields v. Barrow, 17 How. 130, 139; Ribon v. Railroad Co., 16 Wall. 446, 450; Coiron v. Millaudon, 19 How. 113; Williams v. Bankhead, 19 Wall. 563; Kendig v. Dean, 97 U. S. 423; Alexander v. Horner, 1 McCrary, 634, Fed. Cas. No. 169; Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., 1 Sawy. 685, Fed. Cas. No. 2,990. The Pennsylvania banks held judgment liens upon the mortgaged property later in date than, and inferior in equity to, the lien of the Trust Company's mortgage.

They were not indispensable parties to the suit, because their interests were separable from those of the other parties to it, and a final decree which would do complete justice between them might be rendered without immediately affecting the interests of these banks. A decree of foreclosure in a suit to which they were not parties would have left their liens upon the equity of redemption unforeclosed and unaffected. Moreover, their joinder would oust the jurisdiction of the court as to the other parties to the suit, because they were corporations of the same state as the complainant. When this suit was commenced, therefore, the Trust Company had the option to join or to fail to join these banks as parties defendant; and the court had the right to proceed without making them parties, under the decisions which we have cited, and under the forty-seventh equity rule, which embodies these decisions, and reads:

"In all cases where it shall appear to the court, that persons, who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may in their discretion proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

If the complainant had not joined these banks, the jurisdiction of the court would have been impregnable. Was it destroyed because the Trust Company made them parties defendant, and then, with the leave of the court, dismissed them from the suit? In Cameron v. McRoberts, 3 Wheat. 591, McRoberts, a citizen of Kentucky, brought a suit in equity in the district court of the United States for the district of Kentucky, which then had the jurisdiction of a circuit court, and obtained a final decree. There were three defendants to this suit, one of whom (Cameron) was stated in the bill to be a citizen of the state of Virginia, but the citizenship of the others did not appear. A motion to set aside the decree was made on the ground that the court had no jurisdiction because the two defendants whose citizenship was not stated were in fact citizens of Kentucky. Two of the questions certified to the supreme court were:

"Had the district court jurisdiction of the cause as to the defendant Cameron and the other defendants? If not, had the court jurisdiction as to the defendant Cameron alone?"

The answer was:

"If a joint interest vested in Cameron and the other defendants, the court had no jurisdiction over the cause. If a distinct interest vested in Cameron, so that substantial justice, so far as he was interested, could be done, without affecting the other defendants, the jurisdiction of the court might be exercised as to him alone."

Courts do not require the performance of idle ceremonies. The Trust Company might have prevented this objection to the jurisdiction of the court by neglecting to join the Pennsylvania banks as defendants. The circuit court could have removed it by permitting the complainant to dismiss this suit, and to commence another against all the defendants except the Pennsylvania banks. No reason occurs to us why it might not have obviated it by permitting the com-

plainant to dismiss the banks from this suit.    Our conclusion is that the complainant in an equity suit in the federal courts is not required to join any but indispensable parties to the suit, when their joinder will oust the jurisdiction of the court, and, if he does join them, the court may permit their dismissal, and thereupon it has the same jurisdiction and power to proceed to a decree in the case that it would have had if they had never been made parties to it.    Nor could the subsequent introduction of these banks and other parties into this suit for the purpose of protecting their own interests affect the jurisdiction of the court.    When the banks had been dismissed the circuit court had jurisdiction of the subject-matter and of the parties to the suit. It also had the possession of the mortgaged property, which was then in the hands of its receiver.    A suit which had been previously commenced in the same court was consolidated with this suit, and the Pennsylvania banks, on their own petition, were permitted to be made parties defendant to protect their own interests; but all these proceedings were ancillary and subordinate to this suit to foreclose the first mortgage, and all the parties thus brought into this suit were, in effect, interveners for their own benefit.    It was immaterial that some of them were citizens of the same state as the complainant.    Consolidations and interventions do not oust the jurisdiction of the court in the main suit, whatever the citizenship of the parties thus brought into it may be.    Phelps v. Oaks, 117 U. S. 236, 240, 6 Sup. Ct. 714; Stewart v. Dunham, 115 U. S. 61, 64, 5 Sup. Ct. 1163; Hardenbergh v. Ray, 151 U. S. 112, 118, 14 Sup. Ct. 305; Freeman v. Howe, 24 How. 450; Krippendorf v. Hyde, 110 U. S. 276, 286, 4 Sup. Ct. 27; Trust Co. v. Bridges, 16 U. S. App. 115, 6 C. C. A. 539, and 57 Fed. 753; Society of Shakers v. Watson, 37 U. S. App. 141, 155, 15 C. C. A. 632, 638, and 68 Fed. 730, 736.    The objection to the jurisdiction of the circuit court cannot be sustained.

The mortgage on which this suit is based covers the franchises and all the property of the mortgagor.    The appellants insist that the Terminal Company was a quasi public corporation, and that it had no authority to make this mortgage, and they specially urge that it was without power to mortgage its franchises and after-acquired property.    The Terminal Company is the creature of the state of Iowa.    It was incorporated under the general laws of that state. It has the powers granted to it by those laws, together with those fairly incidental thereto, and it has no others.    Omaha Bridge Cases, 10 U. S. App. 98, 174, 2 C. C. A. 174, 230, and 51 Fed. 309, 316. The statutes of Iowa, then, measure the powers of this corporation, and the construction of those statutes by the supreme court of that state, and its determination of the extent of the powers and liabilities of corporations formed under them, are authoritative in this court.    When the highest judicial tribunal of a state has determined the extent of the powers and liabilities of corporations created under its laws. that decision is conclusive in the national courts in all cases in which no question of general or commercial law and no question of right under the constitution of the United States is involved.    Madden v. County of Lancaster, 27 U. S. App. 528, 536, 12 C. C. A. 566, 570, and 65 Fed. 188, 192; Dempsey v. Township of

Oswego, 4 U. S. App. 416, 2 C. C. A. 110, and 51 Fed. 97; Rugan v. Sabin, 10 U. S. App. 519, 3 C. C. A. 578, and 53 Fed. 415; Travelers' Ins. Co. v. Township of Oswego, 19 U. S. App. 321, 330, 7 C. C. A. 669, 673, and 59 Fed. 58, 61; Claiborne Co. v. Brooks, 111 U. S. 400, 410, 4 Sup. Ct. 489; Bolles v. Brimfield, 120 U. S. 759, 763, 7 Sup. Ct. 736; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012. We turn, then, to the statutes and decisions of Iowa, to learn whether this corporation was endowed with power to make this mortgage. When the Terminal Company was organized, the statutes of Iowa provided that any number of people might become incorporated for the transaction of any lawful business, including the construction, ownership, operation, and maintenance of railways, bridges, or other works of internal improvement; that a corporation so formed should have the power to make contracts, acquire and transfer property, and should possess the same power in such respects as private individuals enjoy, but should have no power not possessed by natural persons, except those expressly granted to it by those statutes (McClain's Code Iowa, § 1608; Id. § 1609, subd. 6); that before commencing business the incorporators should adopt articles of association and publish a notice, which should state, among other things, the general nature of the business to be transacted (Id. §§ 1610, 1611); that any corporation organized under the laws of Iowa for the purpose of constructing and operating a railway should have power to issue its bonds for the construction and equipment of its railway, and to secure their payment by executing mortgages or deeds of trust on the whole or any part of its property and franchises, and that such mortgages or deeds of trust might cover property acquired subsequent to their dates (Id. §§ 1955, 1965, 1966); that any number of persons or of railroad corporations, or of persons and railroad corporations, might form themselves into a body corporate, under the foregoing provisions of the statutes, for the purpose of constructing and maintaining union depots for freight and passengers, and that such a corporation should have the power to acquire by purchase or condemnation such real estate as the railroad commission should deem necessary for their depot and its approaches (Id. §§ 2090, 2091). According to the notice given by the publication of its articles of association under these statutes, the general nature of the business and the powers of the Terminal Company were "to construct, operate and maintain one or more lines of railway within the corporate limits of Sioux City, Iowa, with all needed side tracks, depot yards, warehouses, storage houses, elevators, and all other needed terminal facilities, and shall have power to acquire by purchase or condemnation, all needed grounds for right of way, depot purposes, and side-tracks, wood and water stations, * * * and to mortgage, lease or sell the said grounds and improvements thereon." Under this state of facts, the argument of the appellants is that this mortgage was ultra vires the corporation, because the Terminal Company was a quasi public corporation and had no implied power to mortgage its property, because the power to mortgage its franchises and after-acquired property was not claimed in its articles of incorporation, and because it was organized under

82 F.—9

sections 2090 and 2091, supra, relating to corporations to construct union depots, and these sections give such corporations no power to mortgage their property. But this was not a corporation organized for the sole purpose of constructing union depots. On the other hand, the description of the general nature of its business in its articles of incorporation makes no reference to any union depot, and expressly states that its business is, among other things, to construct and operate one or more lines of railway. Conceding, but not deciding, that a quasi public corporation has no implied authority to mortgage its property, such a corporation has express authority to do so under the laws of Iowa which we have cited (McClain's Code, §§ 1608, 1609), and that power is not restricted or lost by a failure to claim it in the articles of association. The statutes of Iowa do not require the powers of a corporation organized under them to be enumerated in its articles, and an omission to claim any of these powers would not leave the corporation so organized powerless. Thus, in Thompson v. Lambert, 44 Iowa, 239, 243, the incorporators limited the objects of a county agricultural society to "the improvement of agriculture, horticulture, mechanic arts, rural and domestic economy." In answer to the contention that the society had no authority to mortgage its property because that power was not enumerated in its articles, the supreme court of Iowa said:

"The power to borrow money, execute notes and mortgages, was neither assumed nor prohibited. In the absence of any such prohibitory provision the power to borrow money, execute notes and mortgages, as evidences of and security for indebtedness created for the necessary and proper purpose of carrying out the objects of the corporation, impliedly exists. For the purpose of effecting the objects of the corporation, its powers are as broad and comprehensive as those of an individual, unless the exercise of the asserted power is expressly prohibited."

All doubt of the power of the Terminal Company to make this mortgage is, however, dispelled by the provisions of sections 1955, 1965, and 1966 of McClain's Code. They expressly authorize any corporation organized under the laws of Iowa for the purpose of constructing and operating a railway to mortgage its franchises and all its property, whether acquired before or after the execution of the mortgage. The Terminal Company was certainly organized to construct and operate a railway, whatever other objects its corporators had in view, and under these provisions it had express authority to make the mortgage in suit. Railroad Co. v. Howard, 7 Wall. 392, 412.

Another position of counsel for the appellants is that this mortgage is void because it violates the rule against perpetuities, which, in Iowa, is embodied in this provision of its statutes:

"Every disposition of property is void, which suspends the absolute power of controlling the same for a longer period than during the lives of persons then in being and for twenty-one years thereafter." McClain's Code Iowa 1888, § 3091.

The argument in support of this position is founded upon this state of facts: On December 14, 1889, the Terminal Company leased to the Sioux City & Northern Railroad Company of Sioux City, Iowa, all its franchises and property for the term of 100 years, for an annual

rental of $90,000. The lease recited that the Terminal Company had been authorized by its stockholders and by its board of directors to make a first mortgage on its franchises and property to the Trust Company to secure the repayment of an amount not exceeding $1,-250,000, and that it was about to do so. It contained a permit to the railroad company to sublet the premises, and covenants by the railroad company that it would pay $75,000 and as much more of its annual rental as should be necessary to pay the expenses of the trusteeship to the Trust Company, to be applied to the payment of the interest on the mortgage bonds and to the payment of the expenses of the trusteeship. It also provided that, if the lessee failed to pay the rent, the lessor might re-enter and take all the rights and remedies of the lessee against the sublessees, and that, if default should be made in the payment of the interest on the mortgage bonds, all those rights and remedies should inure to the benefit of the Trust Company, or of the purchasers under the mortgage. On January 1, 1890, the Terminal Company made to the Trust Company the mortgage in suit, under the form of a trust deed, to secure the payment of bonds due in 10 years, to an amount not exceeding in the aggregate $1,250,000. This mortgage recited the lease to the railroad company, and its provisions for the benefit of the Trust Company and the bondholders. By its terms the Terminal Company transferred and conveyed to the Trust Company all its franchises and property, including all its rights and privileges under the lease to the railroad company. The third article of the mortgage provided that the Terminal Company transferred to and vested in the Trust Company all the powers, rights, and remedies which it had for the collection annually of the $75,000 and the expenses of the trusteeship, which the railroad company had promised to pay to the trustee by its covenants in the lease; that, in case of a default of the Terminal Company in the payment of the bonds or the coupons, it would assign to the Trust Company its lease to the railroad company, and the rentals due thereunder, and that the Trust Company and the purchaser under the mortgage should be entitled to all the rentals from the sublessees. The sixth article of the mortgage gave to the Trust Company the option, in case of default to take possession of the mortgaged property, to operate it, and collect the income, rents, and profits from it, until the principal and interest of the bonds were paid, or until the property was sold. The seventh article declared that the provisions of the preceding article were cumulative to the ordinary remedy by foreclosure in the courts, that a majority of the bondholders might require the trustee to avail itself of this remedy, and that, in the absence of their direction, it might do so at its discretion. The ninth and tenth articles provided that the trustee might purchase at the foreclosure sale, and that a majority in interest of the bondholders might control the exercise of every option given to the Trust Company by the terms of the mortgage. The position of counsel for the appellants is that this mortgage violates the rule against perpetuities, (1) because the lease and the mortgage in fact constitute a tripartite agreement, which might suspend the power of the trustee and the bondholders to possess and convey the property mortgaged

upon a condition precedent, to wit, the termination of the lease or the default of the lessee, which might not be fulfilled until 100 years from the date of the lease; (2) because the provisions of the third and sixth articles of the mortgage, for the collection by the trustee of the $75,000 and the expenses of the trusteeship annually from the lessee, and for the assignment of the lease to the Trust Company by the mortgagor, and the surrender to it of all the rights of the Terminal Company to the rents and income accruing under the lease, in case of the mortgagor's default, tend to prove the suspension of this power, and to render the interest of the trustee too remote; and (3) because the powers given to a majority of the bondholders to control the exercise of the options allowed to the trustee in the mortgage have the same tendency. But there is nothing in these two instruments but a lease for 100 years, and a mortgage by the lessor of its reversion and of the rents accruing to it from the lessee to secure the payment of its bonds due in 10 years. Gray says that the true form of the rule against perpetuities is that "no interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." Gray, Perp. § 201. But a vested interest is not subject to the rule against perpetuities, because it is vested, and by its very nature it cannot be subject to a condition precedent. For this reason, reversions and vested remainders are exceptions to the rule; and leases for terms far longer than lives in being and 21 years are valid, both at common law and under the statute of Iowa, notwithstanding the suspension of the power of the lessors to take actual possession, and to convey the property free from the lease. Id. §§ 205, 736; Railway Co. v. Gomm, 20 Ch. Div. 562, 574; Toms v. Williams, 41 Mich. 552, 572, 2 N. W. 814; Todhunter v. Railroad Co., 58 Iowa, 205, 207, 12 N. W. 267. When this is said, all is said. All the remoteness challenged in this case as obnoxious to the rule or the statute is due to the lease, and not to the mortgage. The debt secured by the latter falls due, by the terms of the bonds, in 10 years from the date of the mortgage; and the trustee and the bondholders are then entitled, if the debt is not paid, to take possession of, and to sell and convey, every interest which the lessor reserved under the lease. It is admitted that a mortgage of an unincumbered title to secure a debt due in 10 years would not violate the rule. But this mortgage is not more obnoxious to it. The reversion, the right to the rents under the lease, and the right to re-enter in case of the failure of the lessor to pay them, were all valid in the hands of the lessor, notwithstanding their remoteness. The only effect of the mortgage was to pledge as security remote but valid interests of the mortgagor, and to give the right to the possession and sale of them if the debt and interest secured were not paid within 10 years. If any of those interests were remote, they were made so by the lease, and not by the mortgage, and they were valid because leases are excepted from the rule. The mortgage, therefore, did not offend against either the rule or the statute against perpetuities. Nor is it material whether the lease and the mortgage should be considered as separate instruments, or as a single tripartite agreement. If the par-

ties could have lawfully made the lease and the mortgage as separate instruments, a tripartite agreement between them which contained all the terms of the lease and the mortgage must be equally valid. The position that the mortgage and the lease, or either of them, violate the rule against perpetuities, must be overruled.

But the appellants insist that the mortgage is void because the debt which it secures is in excess of the amount of indebtedness which the Terminal Company had the power to contract. The law of Iowa under which this corporation was organized provided that the incorporators must, before commencing any business except that of their own organization, adopt articles of incorporation, and that "such articles of incorporation must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which must in no case, except in that of risks of insurance companies, exceed two-thirds of its capital stock," provided that these provisions shall not apply to certain classes of bonds, among which we concede, for the purpose of this discussion and decision, but do not decide, that the bonds of this corporation do not fall. McClain's Code, §§ 1610, 1611. The articles of incorporation of the Terminal Company declare that its authorized capital stock is $1,000,000, and that "the highest amount of indebtedness to which this company shall at any time subject itself shall not exceed two-thirds of the paid-up capital stock of said company, aside from the indebtedness secured by mortgage upon the real estate of the company." Those articles, however, did not enlarge the powers of the corporation beyond those granted by the statutes under which it was created, and, under the concession we have made, they gave it no authority to incur an indebtedness in excess of $666,667. A corporation may not enlarge its powers beyond those granted by the laws under which it was organized by claiming greater powers in its articles of incorporation. 5 Thomp. Corp. § 5996. The indebtedness secured by this mortgage was $1,250,000, and each bond recited that it was one of a series of bonds not exceeding in the aggregate $1,250,000, and that it was secured by a first mortgage upon the property of the Terminal Company. This debt was therefore in excess of the statutory limitation. The mortgage was duly recorded in the office of the proper register of deeds at Sioux City on February 27, 1890; and from that record and the terms of the bonds it is a fair inference that the Trust Company and the bondholders had full notice that the indebtedness secured by this mortgage was in excess of the limitation prescribed by the law of its being. On the other hand, the bonds were sold on the credit of the mortgage for 90 per cent. and 95 per cent. of their par value, and their proceeds were applied by the mortgagor to the payment of its debts, and to the purchase and improvement of its property. Neither the bondholders nor the Trust Company were guilty of any fraud or bad faith in the transaction. The debt was not created nor was the mortgage made or accepted with any intent to defraud any of the existing or subsequent creditors of the corporation. Can the mortgagor, under these circumstances, avail itself of its violation of the statute to defeat the mortgage upon which it has borrowed this money? If not, have its subse-

quent creditors any better standing to assail it? These are the crucial questions in this case. This is a suit in equity. The Terminal Company has received the full benefit of the proceeds of these bonds, and it obtained this money upon the faith of this mortgage. The creation of the debt and mortgage was not without the general scope of its powers, but it was the result of an excessive exercise of one of those powers. The corporation had, as we have seen, the general power to borrow money, and to secure its repayment by a mortgage. If the aggregate amount of the bonds secured by this mortgage had been $650,000, instead of $1,250,000, they would have been valid, in the absence of other indebtedness. The bonds and mortgage did not, like the lease in Thomas v. Railroad Co., 101 U. S. 71; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 290, 309, 6 Sup. Ct. 1094; Oregon Rv. & Nav. Co. v. Oregonian Ry. Co., 130 U. S. 1, 23, 9 Sup. Ct. 409; and Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 50, 11 Sup. Ct. 478,—disable the corporation from performing its obligations to the government and to the public; nor were they, like those leases, beyond the scope of the general powers of the corporation that made them. The statute, whose provisions the bonds and mortgage violate, prescribed no penalty for such a violation. It did not declare that bonds and mortgages issued to secure an indebtedness in excess of the limitation it fixed should be void. Since the legislature imposed no such penalty, it is not the province of the courts to do so. The remedy for the violation of this statute is not the destruction of the contracts which evidence it, but the ouster and dissolution of the corporation at the suit of the state. The state alone can complain of it, and the debtor cannot usurp its functions. Bank v. Matthews, 98 U. S. 621, 629; Fritts v. Palmer, 132 U. S. 282, 292, 10 Sup. Ct. 93; Bank v. Townsend, 139 U. S. 67, 76, 11 Sup. Ct. 496; Thompson v. Bank, 146 U. S. 240, 251, 13 Sup. Ct. 66. The creation of this indebtedness and the execution of these bonds and this mortgage involve no moral turpitude. The articles of incorporation and the mortgage were spread upon the proper public records, so that all who subsequently dealt with the corporation could see what it had done. The bonds and mortgage had in them no element of fraud, deceit, or misrepresentation. They were not evil in themselves. The corporation does not offer to return the moneys which it received upon this mortgage, but seeks to retain all its benefits and to repudiate all its burdens. It will be soon enough for the chancellor to stay his hands from the enforcement of these contracts, and soon enough for him to set them aside, when the corporation returns to the complainant the moneys it received upon them. Until then, good faith, justice, and equity demand their enforcement. A man cannot plead his own wrong to relieve himself from the obligations of an executed contract whose benefits he retains; nor is it any defense for a private corporation, against the enforcement of an executed contract whose benefits it holds, that, while its execution was within the general scope of its powers, it involved an excessive exercise of one of them. While it retains the benefits of such a contract, it silently affirms, and may not be permitted to deny, its validity. Bank v. Matthews, 98 U. S. 621;

Bank v. Whitney, 103 U. S. 99, 102; Humphrey v. Mercantile Ass'n, 50 Iowa, 607, 610, 612; Garrett v. Plow Co., 70 Iowa, 697, 701, 29 N. W. 395; Warfield v. Canning Co., 72 Iowa, 666, 672, 34 N. W. 467; Manchester & L. R. R. v. Concord R. R. (N. H.) 20 Atl. 383; Poole v. Cheese Ass'n, 30 Fed. 513, 520; Allis v. Jones, 45 Fed. 148, 150; Parish v. Wheeler, 22 N. Y. 494; Hays v. Coal Co., 29 Ohio St. 330, 340; Bissell v. Railroad Co., 22 N. Y. 258; McCluer v. Railroad, 13 Gray, 124; Bradley v. Ballard, 55 Ill. 413, 418; Railroad Co. v. Proctor, 29 Vt. 93. Nor is the innocence or ignorance of the creditor essential to the maintenance of his suit to enforce such a contract. In Bank v. Matthews, supra, a bank had made a loan on the security of a note and a mortgage upon real estate, under the form of a deed of trust, in violation of sections 5136 and 5137 of the Revised Statutes, and was proceeding to enforce collection of its debt by a sale under the trust deed when one of the state courts enjoined the sale at the suit of one of the mortgagors, on the ground that the loan by the bank on real-estate security was forbidden by law, and the trust deed was void. The supreme court reversed that decree, and allowed the bank to enforce its contract. In Humphrey v. Mercantile Ass'n, supra, the supreme court of Iowa compelled a corporation to pay to the guilty agent who had contracted it an indebtedness in excess of the limitation prescribed by the statute; and in Garrett v. Plow Co., supra, that court enforced the collection of a debt in excess of the statutory limitation against a corporation and in favor of its directors by the foreclosure of a mortgage which the latter had caused the corporation to make to secure themselves. These decisions do not rest upon the principle of estoppel, nor depend upon the creditors' ignorance of the excessive indebtedness. They stand upon the rule that he who seeks equity must do equity, and upon the principle that one may not at the same time accept the benefits and repudiate the burdens of his contracts.

But it is said that the creditors of this mortgagor are entitled to a declaration that this mortgage is void, and that they have rights here superior to the corporation. This contention is made with special urgency on behalf of the Credits Commutation Company, a corporation of the state of Iowa, whose standing in this respect is certainly as high as that of any of the creditors who have appealed. A brief statement, however, of the transactions out of which its claim has arisen, will show, we think, that this position of its counsel is untenable. In the latter part of the year 1889 the Terminal Company commenced to issue its promissory notes for $5,000 each, and to negotiate them through the Union Loan & Trust Company of Sioux City, a corporation which indorsed and sold them to banks located in the Eastern states. The proceeds of these notes were used by the Terminal Company to purchase and improve its property. Early in 1890 the aggregate amount of these notes had reached $1,250,000. It will be remembered that the Terminal Company made its lease to the Sioux City & Northern Railroad Company on December 14, 1889, and its first mortgage to the Trust Company on January 1, 1890. The bonds secured by this mortgage, with the exception of 250 of them which were disposed of in 1892, were sold early in the year 1890;

and their proceeds were used to pay some of the Terminal Company's notes, and to buy and improve its property. There were, however, some of its outstanding notes that were not paid, and as these fell due the Terminal Company made new notes, and the Union Loan & Trust Company indorsed and sold them, and with their proceeds paid the notes which were falling due. In this way the notes of the Terminal Company which were outstanding on April 25, 1893, were renewals of, or substitutions for, some of the notes issued by that company in 1889 and 1890; but it does not appear that any of the banks which held the notes of the company in April, 1893, ever had any of the notes first issued for the original indebtedness of the corporation. The outstanding notes of the Terminal Company on April 25, 1893, aggregated $718,000. They were held by banks located in the Eastern states, and none of them were made or dated earlier than January 1, 1892. In April, 1893, the Terminal Company made a trust deed of all its property to the Union Loan & Trust Company to secure the payment of these notes. This deed recited that it was subject to the mortgage in suit. The Union Loan & Trust Company, the trustee in this deed, subsequently made a general assignment of all its property and interests to E. H. Hubbard, as trustee. In December, 1893, the Terminal Company assigned all its property to E. H. Hubbard, in trust, to sell the same and apply the proceeds to the payment of its notes. The Credits Commutation Company subsequently became the owner of these outstanding notes of the Terminal Company to the aggregate amount of $616,000. It thereupon sued that company upon these notes in one of the state courts of Iowa, obtained a judgment for their amount and interest on July 23, 1895, had an execution returned unsatisfied, and then intervened in this suit, which had been commenced in 1894. E. H. Hubbard, the trustee under the second mortgage and under the assignment of the Terminal Company, is one of the parties to this suit and one of the appellants in this case, so that the rights of the owners of these notes under their second mortgage of April, 1893, under their trust deed of December, 1893, and under their judgment of July 23, 1895, are all here for adjudication. But how can they establish any rights, as against the first mortgage upon this property, superior to those of the mortgagor? The equities of the appellants who own these notes cannot be higher than those of their original holders, and they became creditors of this corporation subsequent to the sale of all but 250 of the bonds, and probably subsequent to the sale of those. Subsequent creditors stand in the shoes of the mortgagor, where the prior mortgage is not obtained and accepted by the mortgagees with intent to defraud them, and this mortgage certainly was not. Graham v. Railroad Co., 102 U. S. 148, 153; Mattingly v. Nye, 8 Wall. 370; Sexton v. Wheaton, 8 Wheat. 229. Moreover, whether the holders of these notes became creditors before or after the bondholders did, they have established no right to attack this mortgage superior to that of the mortgagor. They could maintain no superior equitable claim to attack it unless they proved that the mortgage was made by the corporation, and was obtained and accepted by the trustee and the bondholders with the intent to deceive and defraud them, and that it did deceive and defraud

them, and there is no such evidence in this case.    They have no legal lien upon the mortgaged property prior to that of the mortgage, and the same considerations which have defeated the defense of the mortgagor make this mortgage impregnable to the assaults of these creditors.    Warfield v. Canning Co., 72 Iowa, 666, 670, 672, 34 N. W. 467; Garrett v. Plow Co., 70 Iowa, 697, 700–702, 29 N. W. 395; Bank v. Whitney, 103 U. S. 99, 103.

Another objection to the validity of this mortgage is that the president and secretary of the Terminal Company who executed it on behalf of that corporation had no authority to do so, because some of the provisions of the mortgage are not identical with those contained in the resolution of the board of directors which authorized its execution.    But the Terminal Company delivered this mortgage to the Trust Company, signed by its president and secretary and sealed with its corporate seal.    This was prima facie evidence that it was executed on behalf of the corporation by lawful authority.    Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 10 U. S. App. 98, 189, 2 C. C. A. 174, 240, and 51 Fed. 309, 327; Burrill v. Bank, 2 Metc. (Mass.) 163, 166; Canandarqua Academy v. McKechnie, 90 N. Y. 618, 629; Wood v. Whelen, 93 Ill. 153, 162; Association v. Bustamente, 52 Cal. 192. The mortgage recited that it was duly authorized by a proper resolution of the board of directors, and each of the bonds recited that it was secured by a mortgage or deed of trust duly made and delivered to the Trust Company, which was a first lien upon all the property of the Terminal Company.    Upon these representations the Terminal Company sold these bonds and obtained their proceeds.    It is too late now for this corporation, or for creditors claiming under it through deeds or liens subsequent to the date of the record of this mortgage, to deny the power of its officers to make it.    A corporation which induces lenders or purchasers to loan it money or to buy its bonds by delivering a mortgage, formally executed, which purports to secure them, is thereby estopped from denying its validity on the ground that, in giving its officers authority to make it, it failed to comply with some law or rule of action with which it might have complied, but which it willfully or carelessly disregarded.    Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 10 U. S. App. 98, 188, 191, 2 C. C. A. 174, 239, 241, and 51 Fed. 309, 326, 328; Zabriskie v. Railroad Co., 23 How. 381, 397, 400, 401.

Finally, the appellants assail the decree because it directs the sale of the mortgaged property as a whole, and does not reserve to the mortgagor and to subsequent lienors the right of redemption from the sale, in accordance with the provisions of the statutes of Iowa relative to sales of real property under execution.    McClain's Code Iowa, §§ 4317, 4331.    But this statutory right of redemption and right to a sale in separate parcels does not extend to the real estate of a corporation which is mortgaged with its franchise to acquire, hold, and use property for public purposes, and whose chief value depends upon its unity, and its use for and appropriation to those purposes.    Hammock v. Trust Co., 105 U. S. 77, 90.    The decree below was right, and it must be affirmed, with costs.    It is so ordered.