## T. C. ROWE v. S. L. GOHLMAN, SR., ET AL.

Decided November 26, 1906.

**1.—Negotiable Paper—Endorsement—Art. 307, Rev. Stats., Construed.**

A negotiable note was transferred by the following endorsement: "For value received the within note together with collaterals securing the payment of same is transferred to S. C. Gohlman, Sr." Even if such endorsement destroyed the negotiability of the note under the law merchant, still under the provisions of article 307, Revised Statutes, the endorsee was clothed with the same rights as if the assignment was in blank.

**2.—Same—Credit upon Preexisting Debt—Valuable Consideration.**

Where a negotiable instrument is transferred by a debtor to creditor, and by the latter credited upon a preexisting indebtedness, such crediting is a valuable consideration.

**3.—Rule 66 Construed—Waiver.**

Although Rule 66 for the District Courts forbidding the rendition of a judgment within two days of the close of the term has the force of law, still a violation of said rule will not in every case nullify the judgment so rendered, nor furnish ground for reversal. Its provisions may be waived, and such will be the effect when parties stand by and permit the judgment to be rendered without protest, until afterwards.

**4.—Negotiable Paper—Fraud—Burden of Proof.**

Fraud in the inception of paper put into circulation prevents the presumption that the endorsee is an innocent holder, and the burden rests upon him in such case of proving that he acquired the paper before maturity in the ordinary course of business and for a valuable consideration.

Error from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*F. B. Stanley* and *Rowe & Rowe,* for plaintiff in error.—Rule 66 prescribed by authority of law is in its terms, effect, purpose and intention,

statutory, mandatory and obligatory and its violation reversible material error, from which injury prejudicial to defendant T. C. Rowe will be legally presumed. Rules for Courts of Texas (1899), p. 28, sec. 66; Texas Land Co. v. Williams, 48 Texas, 602; Texas Rev. Stats. (1895), 947; 18 Ency. Pld. & Prac. p., 1262.

That misrepresentation, concealment or failure to disclose facts materially affecting value, is fraud and annuls the contract to pay. Adams v. Henderson, 168 U. S., 579; Stewart v. Wyoming Cattle Co., 128 U. S., 388; Benjamin on Sales, 7 ed., pp. 482, 611, 621, 630, 672.

It is a fraud annulling and avoiding the contract, although seller afterwards removes the incumbrance. Benjamin on Sales (7th ed.), p. 482; Stevenson v. Marble, 84 Fed. Rep., 23.

Lester in selling to Rowe his personal property rights and interests in these inventions impliedly represented and affirmed that he had a full and unencumbered title and right to dispose of same, subject to said options, for the consideration paid and promised. Pitt v. Elser, 32 S. W. Rep., 146; Benjamin on Sales (7th ed.), pp. 482, 611, 621, 630, 672.

Contract rights are property in Texas. City of Sherman v. Connor, 88 Texas, 35.

Lester's rights in said note and money fund were assignable as property without endorsement. Davis v. Sittig, 65 Texas, 497.

But purchaser who pays therefor by crediting the purchase price on past due indebtedness is not a purchaser for value paid. Overstreet v. Manning, 67 Texas, 657.

The assignee takes only the rights of his assignor. Weathered v. Smith, 9 Texas, 623; Davis v. Sittig, 65 Texas, 497; Central Trust Co. v. First National Bank, 101 U. S., 68.

The negotiable contract of endorser and endorsee of negotiable paper is essential and necessary to give it currency as commercial paper and to protect the holder against proper defenses of the maker. Davis v. Sittig, 65 Texas, 477; Weathered v. Smith, 9 Texas, 623; Central Trust Co. v. First Nat. Bank, 101 U. S., 68.

Holder for value can not use his position for benefit of fraudulent payee nor to injure the person defrauded. Van Winkle v. Citizen's Bank, 89 Texas, 153.

Nor act as collector for payee. Blum v. Loggins, 53 Texas, 136.

Laws intended for protection only can not be used to effectuate a fraud. Womack v. Womack, 8 Texas, 397.

"But we know that the law is good if a man use it lawfully."—1 Timothy, 1 chap., 8 verse.

*Hutcheson, Campbell & Hutcheson,* for defendants in error.

GILL, Chief Justice.—S. L. Gohlman, Sr., brought this suit against T. C. Rowe as maker and J. E. Lester endorser of a promissory note for $550, with interest and attorney's fees according to its terms. It was also averred that defendant Rowe had by authority of plaintiff collected certain funds which he had pledged to secure the note and holds same in trust for him and he prays that the court compel Rowe to pay over the funds in question.

Lester made no defense, Rowe made the point that there was a mis-

joinder of causes of action in that it prayed for a judgment at law on the note as unpaid and also for a decree that Rowe account for and pay over the alleged trust fund. Rowe pleaded in defense that the note and assignment of funds were parts of a larger transaction. That the note was given in part payment for an interest in a certain patent right purchased from Lester. That Lester fraudulently misrepresented the amount of his interest so sold. That the consideration had materially failed and that plaintiff was a purchaser with notice and not for value.

The case was tried to the court without a jury on April 17, 1905, and the court having taken the matter under advisement rendered judgment in favor of plaintiff for the amount of the note, according to its terms, on June 2, 1905. Lester did not appeal. Rowe excepted and gave notice of appeal and 20 days were allowed after adjournment of the court to file statement of facts. Conclusions of fact and law were filed at the request of appellant and the court adjourned on June 3, 1905. Rowe has brought the cause before us on writ of error.

The facts as disclosed by the record are briefly as follows: Geo. C. Kitchen discovered a preparation which he supposed and claimed was an effective exterminator of the cotton pest known as the boll weevil, and invented a machine for spraying the plant with the preparation. He undertook to secure a patent and to form a company for their manufacture and sale. W. S. Napier, J. B. Brockman, J. H. Rhodes and Lester became the owners with Kitchen of the rights to the discovery and machine.

On March 15, 1904, Kitchen, Napier and Lester entered into a written agreement called a pooling agreement whereby they mutually bound themselves to own their holdings in common. That any further interest acquired by either one of the contracting parties should be held likewise upon compensation being made to the party making the additional purchase and the entire holdings of the three should be held and voted as a single interest.

On March 16, 1904, Lester acquired the interest held by Rhodes, amounting to one-fourth of the whole, burdened with a stipulation in the written transfer that out of the net dividends which his interest might earn after the first year he should be paid $2,000 per year during the life of the patent.

On the 16th day of May, 1904, Lester for $50 cash and the note sued on in this case sold to Rowe his interest in the discovery and patent machine and conveyed same in writing in the following terms:

"State of Texas,  ⎫
County of Harris.⎰

"Know all men by these presents, that I, J. E. Lester, of the above State and county, for and in consideration of the sum of six hundred ($600) dollars to me paid and agreed to by T. C. Rowe, also of Harris County, Texas, as follows: Fifty dollars cash, receipt of which is hereby acknowledged, and one promissory note of the said T. C. Rowe of even date herewith for the sum of five hundred and fifty dollars, payable on or before January 1, 1905, at the office of the said J. E. Lester, in Houston, Harris County, Texas, and bearing interest from maturity at the rate of eight percent per annum until paid, and providing for ten

percent additional if collected by legal measures, have granted, bargained, sold and assigned, and do by these presents grant, bargain, sell, convey and assign unto the said T. C. Rowe, his heirs and assigns, all and singular, my whole and entire interest and claim of every kind, nature and description in and to that certain formula patented by George C. Kitchen and J. B. Brockman, or either of them, for the purpose of exterminating boll weevils and other insects as well as of all my entire interest in and to the Kitchen Spraying Machine to be used in connection with the use of said formula, a patent for which machine has been applied for. The interest herein conveyed being one-sixth interest of the whole (acquired from G. C. Kitchen) and also a one-third of all of that certain interest acquired from one J. H. Rhodes by me March 16, 1904, the same being all of my interest and right in said formula and machine. This conveyance is made subject to the pooling agreement between myself, Geo. C. Kitchen and W. S. Napier, which is dated March 15, 1904.

"Witness my hand this the 16th day of May, A. D. 1904.

J. E. Lester.

Witnesses:

      O. L. Cochran,
      Jas. A. Painter."

The following is a copy of the note:

"Houston, Texas, May 16, 1904.

On or before January 1, 1905, after date, I promise to pay to the order of J. E. Lester, at his office, in Houston, Texas, five hundred and fifty dollars ($550) with interest at the rate of eight percent per annum from maturity until paid, and ten percent additional on the full amount due if placed in the hands of an attorney for collection. Value received." (Signed) "T. C. Rowe."

To secure this note Rowe transferred by a separate writing his interest in a certain cash fund on deposit with the court in a certain litigation then pending in Jefferson County.

On the —— day of ———— 19—, and before maturity, the note was transferred to plaintiff by the following written endorsement on the back thereof: "For value received the within note together with collaterals securing the payment of same is transferred to S. C. Gohlman, Sr." (Signed) "J. E. Lester." Gohlman credited the amount of the note on a past due indebtedness then due by Lester to him. Thus far the evidence is undisputed.

The appellant assails the judgment upon two points affecting the merits.

First. That the court erred in finding that Rowe was neither misled nor defrauded; and

Second. The court erred in finding that Gohlman was an innocent purchaser for value without notice.

Upon the first point the evidence is sharply conflicting. Rowe testifies unequivocally that in purchasing Lester's interest the latter represented that it consisted of five-twelfths of the whole, and that it was unencumbered except by the provisions of the pooling agreement. That he

would not have made the purchase but for his reliance upon the truth of Lester's representations and that he had no knowledge of the annual burden imposed by the transfer from Rhodes to Lester. The latter testified that Rowe wrote the transfer and he, Lester, signed it. That thereby Rowe got all the interest he bought. That he made no representations and concealed nothing. That the written transfer was his entire contract with Rowe. "That Rowe knew what interest he was getting and was not misled by Lester." In this general language Lester denied flatly the testimony of Rowe and further testified that the pooling agreement together with all his title papers were delivered into Rowe's hands when the sale was made including the written transfer from Rhodes in which the $2,000 annuity was reserved. This last statement Rowe did not dispute but claims he did not examine the transfers until long afterwards and relied soleyly on Lester's representations and the terms of the transfer to him, Rowe.

The concern was to be capitalized at $500,000. Rowe bought Lester's interest for $600. It was shortly thereafter discovered that the formula for destroying weevils was absolutely worthless.

The court found that Lester had been guilty of neither misrepresentation nor concealment; that Rowe now owns all he ever purchased and that there has been no failure of consideration. In this state of the record we are not authorized to disturb that finding. Lester testified sweepingly that all that Rowe stated was untrue and the court has accepted Lester's statement. The record does not disclose that by cross-examination or otherwise Lester was induced to modify his statements or to make his assertions and denials more specific. If appellant was content to dismiss the witness with his testimony in this form we must in support of the court's conclusion accord it the fullest weight and significance of which his language is fairly susceptible. If his meaning was other than as construed by the trial court the slightest cross-examination would have disclosed it. (Oregon Steamship Company v. Otis, 3 N. E. Rep., 486.) The assignment addressed to this point is therefore overruled.

The court also found upon sufficient evidence that Gohlman in due course of business purchased without notice of any fraud affecting the execution of the note, and held as matter of law that the credit thereof on the preexisting debt of Lester furnished a valuable consideration supporting the transfer. Appellant contends that the holding is unsound because the endorsement whereby the transfer was made is not such as would render the paper negotiable, but destroyed its negotiability under the law merchant. Conceding this to be true, it is our opinion that article 307 of the Revised Statutes places the endorsee in this instance in the same position and clothes him with the same rights as if the assignment was in blank. The article in effect provides that if the instrument was in form negotiable at law the form of the endorsement whereby the transfer was accomplished would not affect an innocent holder for value. We regard this as the effect of the holding in Word v. Elwood, 90 Texas, 130, and Fort Dearborn Nat. Bank v. Berrott, 23 Texas Civ. App., 662, is exactly in point. See also Blum v. Loggins, 53 Texas, 121, in which it is held that crediting such an instrument upon a preexisting debt is valuable consideration.

Appellant complains that the judgment was rendered on the day preceding the close of the term of the trial court though the trial was actually had many days before, and seeks here a reversal upon that ground because of the provisions of Rule 66 forbidding the rendition of a judgment within two days of the close of the term under such circumstances. The terms and purpose of the rule are very clear, and because formulated by the Supreme Court in pursuance of express legislative authority have doubtless the force of law. But from this it does not follow that a failure to comply with its provisions will either nullify a judgment or furnish ground for reversal. Certainly its provisions may be waived by the parties litigant, so the question presented is, was there a waiver? So far as this record shows the judgment was announced without protest from appellant, who apparently stood by hoping for a judgment in his favor. There is no bill of exception and the respective dates of the hearing, the judgment and the close of the term are only incidentally disclosed by the record. For aught that appears here the action of the court may have been invited by the appellant. At any rate it is not allowable to play fast and loose with the trial court by taking the chance of getting a satisfactory judgment, and at the same time mentally reserving the right to protest that no judgment should have been rendered in the event the judgment should prove displeasing. The point is without merit, as are the other assignments. For the reasons given the judgment is affirmed.

### ON REHEARING.

We stated in the main opinion that Rowe did not contradict the witness Lester's statement that the latter had delivered to Rowe at the time of the sale all the written transfers including the transfer from Rhodes in which the royalty was reserved. Of this appellant complains, and a careful examination of the record has convinced us that our construction of Rowe's testimony on that point was not correct. For the sake of accuracy we make the correction though it can not possibly affect the result inasmuch as the trial court accepted Lester's version of the transaction, thus finally determining the fact question involved. Upon the issue of notice to Rowe of the incumbrance of which he complains, we do not say we could have found primarily as did the trial court, but to disturb his finding in the light of the record as it stands would be a violent departure from established precedent and a distinct invasion of the province of the trial court.

This conclusion of itself disposes of this appeal though we based our affirmance upon two grounds, the second being the fact that Gohlman was an innocent purchaser for value. Much of appellant's assault upon this part of the opinion is based upon the contention that Gohlman was not in fact innocent of knowledge of the fraud of Lester. Under the evidence the finding of the trial court upon this point can not be disturbed.

The further contention is made that crediting the note upon a preexisting debt was not a parting with value. This subject was discussed briefly in the main opinion and the question decided adversely to appellant on the theory that the note was a negotiable instrument under the law merchant and though the form of endorsement did not conform to the

law merchant its negotiability was preserved by our statute. We cited cases which we still regard as controlling notwithstanding the able argument of counsel.

He further contends, however, that as the note had its inception in fraud the endorsee, though innocent of any knowledge of the fraud, must show that he purchased for a value other than a credit upon a preexisting debt. We understand the rule to be that fraud in the inception of the paper negotiated affects only the burden of proof and not the character of consideration which suffices in the purchase of such paper. In Rische v. Planter's Nat. Bank, 84 Texas, 413, cited by appellant, the character of the consideration was not a subject of inquiry, hence the point was not decided, but Judge Stayton, at page 420, uses the following language: "If the averments of the answer are true there can be no doubt that the paper was put in circulation fraudulently and when this is shown to be the case the presumption that an endorsee is an innocent holder can not be indulged, and the burden of proving that he had acquired the paper before maturity in the ordinary course of business for a valuable consideration rests upon him." Among the authorities cited in support of this doctrine are Blum v. Loggins, 53 Texas, 136, and Bailey's Onus Probandi, 223. In Blum v. Loggins at page 136, Chief Justice Moore, speaking to the exact question said, "They (the endorsees) took it for the purpose of liquidating an antecedent indebtedness which is certainly not out of the usual course of business in the transfer and assignment of commercial paper. And when taken for such a purpose is it not also taken *bona fide* for value? It is certainly so according to the common understanding. And we believe it has been universally so held when the antecedent debt has been released or discharged by the transfer. . . ."

Press of business does not permit us to further extend this opinion. We have found no reason to change our views as to the duty of this court to affirm this judgment.

Appellant complains that we have charged him with "playing fast and loose with the trial court" upon another point. We disclaim any such purpose. We intended to say no more than that the record failed to disclose that he did not stand by and hear the judgment of the trial court without protest that no judgment should be rendered at that late day in the term, and that to permit the point to be made for the first time on appeal would be to permit litigants to "play fast and loose with trial courts" in the matter of the enforcement of the rule which he invokes. The motion is overruled.

*Affirmed.*