GASTON & AYRES v. J. I. CAMPBELL CO.

(Supreme Court of Texas.  Nov. 15, 1911.)

1. BILLS AND NOTES (§ 365*) — BONA FIDE PURCHASERS.

The purchaser of a negotiable note in due course before maturity and for value, without notice of any infirmities, is entitled to recover thereon, irrespective of defenses existing against it as to the maker.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 944, 958, 959; Dec. Dig. § 365.*]

2. CORPORATIONS (§ 487*)—ULTRA VIRES ACTS.

A contract of a corporation, which is ultra vires in the proper sense of that term, as beyond the corporate powers, is wholly void, and not merely voidable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

3. BILLS AND NOTES (§ 359*) — BONA FIDE PURCHASERS — CONSIDERATION — PRE-EXISTING DEBT.

That a part of the consideration paid for the transfer of a negotiable note was the extinguishment of a pre-existing debt due to the transferees did not prevent them from being bona fide purchasers.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 359.*]

4. BILLS AND NOTES (§ 367*)—CORPORATIONS — ULTRA VIRES CONTRACTS — ESTOPPEL TO DENY VALIDITY.

Rev. St. 1895, art. 651, subd. 7, gives every corporation power to enter into any contract essential to the transaction of its authorized business.  Article 653 gives corporations power to borrow money on the corporate credit and to execute notes therefor, and pledge their property.  The vice president of a business corporation executed a negotiable note in his own name to pay a debt of the corporation, and indorsed thereon the guaranty of the corporation executed by himself as vice president.  The note was made in double the amount of the indebtedness at the request of the payee, who agreed to fix the balance later.  Nearly half of its face was used to discharge the corporate indebtedness, and the corporation had refused to restore such amount.  *Held* that, since the corporation under the statute had power to execute notes in its own name to raise funds to discharge its indebtedness, the unauthorized execution of the note by the vice president was merely a misuse of granted power, and not a wholly ultra vires act, and, under the circumstances, the corporation was estopped as against a bona fide purchaser of the note from asserting the vice president's want of authority to execute the guaranty and note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 947, 948; Dec. Dig. § 367.*]

5. BILLS AND NOTES (§ 367*) — BONA FIDE PURCHASER—CORPORATIONS.

If the execution of a note by the vice president of the corporation, and its guaranty by the corporation through him, was for its benefit, subsequent entries on the corporate books as to the nature of the transaction could not affect the rights of the parties.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 367.*]

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Receivership proceedings were brought against the J. I. Campbell Company, in which Gaston & Ayres intervened to recover on a promissory note.  Judgment for interveners for only part of their claim was affirmed by the Court of Civil Appeals (130 S. W. 222), and interveners bring error.  Reversed and remanded, with directions to render· judgment for interveners.

Hogg, Gill & Jones and Etheridge & McCormick, for plaintiffs in error.  E. P. & Otis Hamblen and Spotts & Matthews, for defendant in error.

RAMSEY, J.  The district court for the Fifty-Fifth judicial district appointed a receiver of all and singular the properties of the J. I. Campbell Company, a company, which had theretofore been incorporated under the laws of this state.  The plaintiffs in error, Gaston & Ayres, intervened in this receivership suit, and sought a recovery on a note for $12,500 dated at Houston, Tex., December 30, 1904, made by I. L. Campbell, payable to Ross L. Clark, due one year after date, with interest from date at the rate of 7 per cent. per annum.  This note was negotiable in form.  It bore the following indorsement: "For value received we guarantee the payment of the within note.  J. I. Campbell Company, by I. L. Campbell, Vice President."  The evidence shows that at the time of the execution of the note the indorsement appearing thereon was entered by I. L. Campbell, the acting and active vice president of the company; the president, Mr. J. I. Campbell, having theretofore died.  The evidence also· shows beyond question that at this time the company was in great financial straights, and was being strongly pressed by the T. W. House bank for payment of a past-due debt amounting to something like $6,500.  It was stated by Mr. I. L. Campbell that he "executed the note you hand me for the purpose of liquidating that indebtedness."  The details of the transaction are thus stated by him: "I, acting on behalf of the J. I. Campbell Company, did on or about December 30, 1904, apply to Mr. Jesse H. Jones for assistance in the matter of obtaining funds with which to pay T. W. House, and in| that respect this is what occurred between myself and Mr. Jones: I went to Mr. Jones, and told him Mr. House was desirous of having us pay what was due, him, and that I would like for him to help me get some money to pay Mr. House, and he said that he would do so, that he would see Mr. House, and would arrange it for me.  Now, I do not know whether it was at the same time or the next time I saw him that he suggested I give him the amount due Mr. House—$6,500 I think was the amount—and, when I came to draw the note, he, Jones, said to draw the note for $12,500, and I asked him why I should make it for $12,500, and he said he would fix the balance of it later.  'I said 'All right,' and executed the note myself, individually, he, Jones, asking me to make it to Ross L.

Clark, and, of course, I, being under obligations to him, made it as he suggested to Ross L. Clark. I did not know Mr. Clark in the matter at all. Then, at the time of delivering the note to him, Jones, he asked me to have the J. I. Campbell Company guarantee it, my note. I told him that I did not like to do that, that it was hardly business, and he, Jones, said that was all right, we could fix the balance of it later, and to just guarantee the note, which I did, writing the guaranty which appears on the back of this note (meaning the note in suit). I delivered, then, the note in suit to Jesse H. Jones. Do not think Ross L. Clark was there at the time. I do not personally know anything about the negotiations of this note to the interveners, Gaston & Ayres. Jesse H. Jones at the time I had the dealing with him just detailed paid to T. W. House the $6,500 which the J. I. Campbell Company owed him, the T. W. House bank, and such payment was made by Mr. Jones by reason of the execution and delivery of this note to him (meaning the note in suit). As to what the understanding was about the remaining $6,000 of the note, why, there was no understanding about it at that time particularly, except that he said that he would take care of that later. There was no particular understanding with reference to that, but it was left to be arranged subsequently. I did not consider that that $6,000 as a credit on a part of the Campbell Company in the hands of Jesse H. Jones. Jesse H. Jones at that time was solvent and financially responsible. As to whether or not, I, acting on behalf of the J. I. Campbell Company at that time, had any trades pending with Jesse H. Jones, think they were all closed up prior to that time. Do not think there were any unfinished items of business between them. I relied on Mr. Jones' word about making future arrangements as to the $6,000 in executing the note for $12,500, and I had no hesitation in leaving the residue, $6,000, in his hands."

It was not denied or questioned that Gaston & Ayres acquired the note in the due course of trade and for value, and that they acted in the utmost good faith, and had no notice of any defect, infirmity, or want of consideration in respect thereto, or that they had knowledge of any fact which would put them on inquiry as to any infirmity in the note, unless as a matter of law the note itself and the indorsement appearing thereon would visit them with such notice.

In the trial court a verdict in favor of Gaston & Ayres for $6,500 was instructed, and judgment for this sum was rendered in their favor. This judgment was on appeal to the Court of Civil Appeals by them affirmed, and it is from this judgment that the case is brought to this court on writ of error.

The main proposition submitted in behalf of the plaintiffs in error, and which, if sustained, must dispose of the case, is as follows: "The undisputed evidence shows that plaintiffs in error purchased before maturity and paid full value for the paper sued on by them herein, without any reason whatever to suspect that same was not made in the due course of business by the corporation, J. I. Campbell Company, and as the result of the guaranty of the corporation upon the paper it received and retained the full value thereof, and plaintiffs in error were, therefor, entitled to have judgment rendered in their favor for the full amount sued for by them, and the said Court of Civil Appeals erred in not so doing." We have no doubt that this proposition is under the undisputed evidence sound, and that Gaston & Ayres are entitled to recover in said proceeding the full amount of their debt, and we do here and now so adjudge and decree.

In order that the grounds for so holding may distinctly appear, we will now set forth at some length the particular reasons which have led us to this conclusion. Negotiable paper in the shape of bills, notes, checks, and drafts evidence not only a large part of the wealth of the country, but furnish the means and basis on which and by which the greater part of the commerce and business of the nation is conducted. There passes through the banking houses of the country and through the mails every day of the year in this form a merchandise that far "outshines the wealth of Ormus and of Ind." It has been truly said of them that they are "couriers without luggage." Not only by the law merchant of this country and England is negotiable paper favored and protected, but generally it is also protected by statute.

[1] So that it may be said to be the law of this state, settled so definitely as to be past discussion or controversy, that the purchaser of a negotiable note in due course of trade before maturity and for value and without notice of infirmities in it or defenses against it will be protected, and, when suit is brought thereon, will be entitled in the courts to recover on same. It is not, however, to be doubted that such a note may carry on its face such a danger signal that the purchaser may disregard same only at his peril. It may in many forms in the language of Lord Denman "bear its death wound on its face." We are therefore remitted to the task of assigning this note and our decision to the sound and settled rules of law, which under the facts must govern and control. It was shown by the charter read in evidence that the J. I. Campbell Company was incorporated on February 17, 1904, with a capitalization of $500,000, with its principal office in the city of Houston, for the purpose of operating sawmills and planing mills, the manufacture of lumber, and of articles made of lumber, and the purchase and sale of such goods, wares, and merchandise as are used in such business. It was shown that Mr. I. L. Campbell was the active vice president

of the company, and the general and indeed the only manager of its business and affairs, conducting its business and executing its bills payable, and that he was acting for and on behalf of the company in the matter in hand here. It is also undeniable that the company received directly the sum of $6,500 paid to the House bank. In this condition of the record, it is insisted that since the company as the result of its indorsement upon the note sued on received and retained the said sum of $6,500, and refused to restore same, it is and of right should be estopped, as against the plaintiffs in error, who are innocent purchasers of said note, before maturity and for value, to assert that I. L. Campbell did not as vice president of said company possess the authority to indorse the guaranty of the company on the note sued on. Subdivision 7, art. 651, Rev. St. 1895, provides that every corporation, as such, has power "to enter into any obligation or contract essential to the transaction of its authorized business." Article 653, Rev. St., provides that "corporations shall have power to borrow money on the credit of the corporation, not exceeding its capital stock, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation." Under this provision, it has been held that such a corporation may lawfully mortgage its entire corporate property. Pumphrey v. Threadgill, 9 Tex. Civ. App. 184, 28 S. W. 450. It will thus be seen that the corporation in question had undoubted and express power to execute directly and in its own name a note for funds needed either to discharge its indebtedness or for the conduct of its business. It had undoubtedly the same power for like purposes to indorse and guarantee notes of its customers or other persons when done solely for its own uses and directly for its own benefit. We are not then, in a strict sense, dealing with a case where there was no power at all to do the particular thing under discussion, but rather with a case in which, to put it most strongly in favor of the defendant in error, there was a misuse of a granted power. The doctrine of ultra vires therefore can, as we believe, have little application.

[2] This doctrine is perhaps best stated in the case of Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 50, 11 Sup. Ct. 488, 35 L. Ed. 55, where it is said: "A contract of a corporation which is ultra vires in the proper sense—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature—is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it." Again, in the case of McCormick v. Market National Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817, it is said: "The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to take notice of the legal limits of its powers, the interest of the stockholders not to be subject to risks which they have never undertaken, and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. Pearce v. Madison & Ind. Ry., 21 How. 441 [16 L. Ed. 184]; Pittsburgh, Chicago, etc., Ry. v. Keokuk & H. Bridge Co., 131 U. S. 371, 384 [9 Sup. Ct. 770, 33 L. Ed. 157]; Central Transp. Co. v. Pullman's Pal. C. Co., 139 U. S. 24, 48 [11 Sup. Ct. 478, 35 L. Ed. 55]."

Now, then, in the light of the provisions of our statutes and the well-established rules by which we must be governed, let us examine the case in hand.

[3] In the first place, it is well settled that the fact that a portion of the consideration paid for the note by Gaston & Ayres was the cancellation and extinguishment of a pre-existing debt due it constituted then none the less bona fide purchases. Blum v. Loggins, 53 Tex. 121; Alstin's Ex'r v. Cundiff, 52 Tex. 453; Heffron v. Cunningham, 76 Tex. 318, 13 S. W. 259; Herman v. Gunter, 83 Tex. 69, 18 S. W. 428, 29 Am. St. Rep. 632; Rowe v. Gohlman, 44 Tex. Civ. App. 315, 98 S. W. 1079. Again, it is rendered certain that the acting officer of the Campbell Company, I. L. Campbell, did not know Ross L. Clark to whom the note was made payable, and that the note was executed by Campbell and guaranteed by the company to raise money for the company, and that at least $6,500 of the proceeds of the note was applied to the company's indebtedness, and that said sum at least has been retained by the company, and that there has been at no time any offer made to return or restore it to Gaston & Ayres.

[4] The case, therefore, comes squarely within the rule laid down by Judge Sanborn in Lyon, Potter & Co. v. First National Bank of Sioux City, 85 Fed. 120, 29 C. C. A. 45, where on almost the same fact it was said: "Lyon, Potter & Co. was a trading corporation. It and its treasurer, Potter, who indorsed its name upon this note, had the power to make and indorse commercial paper with the name of this corporation for its benefit in the ordinary course of its commercial business. But neither of them had the power to make or indorse such paper in the name of the corporation without consideration, and for the sole benefit of another. It is ultra vires of a commercial corporation and its officers to make accommodation paper, or to guaranty the payment of the ob–

ligations of others. National Park Bank v. German-American Mutual Warehouse & Security Co., 116 N. Y. 281, 292, 22 N. E. 567 [5 L. R. A. 673]; Central Bank v. Empire Stone Dressing Co., 26 Barb. [N. Y.] 23; Bridgeport City Bank v. Empire Stone Dressing Co., 30 Barb. [N. Y.] 421; Farmers' & Mechanics' Bank v. Empire Stone Dressing Co., 5 Bosw. [N. Y.] 275; Morford v. Bank, 26 Barb. [N. Y.] 568; Bank of Genesee v. Patchin Bank, 13 N. Y. 309; Ætna Nat. Bank v. Charter Oak Life Ins. Co., 50 Conn. 167; Monument Nat. Bank v. Globe Works, 101 Mass. 57 [3 Am. Rep. 322]; Davis v. Railroad Co., 131 Mass. 258 [41 Am. Rep. 221]; Culver v. Real-Estate Co., 91 Pa. 367; Hall v. Turnpike Co., 27 Cal. 255 [87 Am. Dec. 75]; Madison W. & M. Plank-Road Co. v. Watertown & P. Plank-Road Co., 7 Wis. 59; Lucas v. Transfer Co., 70 Iowa, 541, 549, 30 N. W. 771 [59 Am. Rep. 449]. An indorsement of this character, however, is not malum in se, is not prohibited by statute, and is not beyond the general scope of the powers of such a corporation. It is merely an excessive exercise of one of those powers, an excessive exercise of the power which it has, in proper cases, to make and indorse commercial paper. Where such an indorsement has been apparently made for the benefit of the corporation, and has been in fact made partly for its own benefit and partly for the accommodation of another, and the corporation has received and retained the benefits of the indorsement, the contract is not void, because it is no defense for a private corporation against the enforcement of an executed contract whose benefits it holds that, while its execution was within the general scope of its powers, it involved an excessive exercise of one of them. While such a corporation retains the benefits of such a contract, it silently affirms, and must not be permitted to deny its validity. Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 135 [27 C. C. A. 73, 84]; Bank v. Matthews, 98 U. S. 621 [25 L. Ed. 188]; Bank v. Whitney, 103 U. S. 99, 109 [26 L. Ed. 443]; Humphrey v. Association, 50 Iowa, 607, 610, 612; Garrett v. Plow Co., 70 Iowa, 697, 701, 29 N. W. 395 [59 Am. Rep. 461]; Warfield v. Canning Co., 72 Iowa, 666, 672, 34 N. W. 467 [2 Am. St. Rep. 263]; Manchester & L. R. Co. v. Concord R. R. [66 N. H. 100] 20 Atl. 383 [9 L. R. A. 689, 49 Am. St. Rep. 582]; Poole v. Association [C. C.] 30 Fed. 513, 520; Allis v. Jones [C. C.] 45 Fed. 148, 150; Parish v. Wheeler, 22 N. Y. 494; Hays v. Coal Co., 29 Ohio St. 330, 340; Bissell v. Railroad Co., 22 N. Y. 258; McCluer v. Railroad Co., 13 Gray [Mass.] 124; Bradley v. Ballard, 55 Ill. 413, 417 [8 Am. Rep. 656]; Railroad Co. v. Proctor, 29 Vt. 93." The case here is easily distinguishable in its facts from the cases relied on by defendant in error, all of which we have carefully read. In all these cases, without discussing each of them in detail, it appeared either that the corporation executing the guaranty was without legal authority to execute the contract sued on at all, or that the note sued on by its terms gave notice of its vice and infirmity, that it was obtained without payment of what in law is termed valuable consideration, or that the purchaser when he received the note thereafter sued on had notice that the indorsement was without consideration. This is true in whole or in part in the cases of Park Hotel Co. v. Fourth National Bank, 86 Fed. 742, 30 C. C. A. 409; Capital City Brick Co. v. Jackson, 2 Ga. App. 771, 59 S. E. 92; Greene v. Middleboro Town & Land Co., 121 Ky. 355, 89 S. W. 228; Humboldt Mining Co. v. American Mfg. Min. & Mil. Co., 62 Fed. 356, 10 C. C. A. 415; Deaton, Grocery Co. v. International Harvester Co., 47 Tex. Civ. App. 267, 105 S. W. 556; North Side Railway Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778. Again, it seems to us that when analyzed, in the light of the uncontroverted evidence, the whole case comes to this. The transaction in question was in fact by the company and for the company. Now if the company had executed the note in its proper name and same had been indorsed or guaranteed by I. L. Campbell, it would not be questioned that the company would be liable at the suit of any purchaser for value without notice. Can the fact that as matter of convenience, in a transaction in which the company was the real actor and in which it only was to be benefited the note was in form made the obligation of I. L. Campbell and at the same time guaranteed by the company change the rights of a bona fide holder thereof? Suppose I. L. Campbell had been compelled to have paid this note; can it be doubted that he would have the right to reimbursement from the company, if the company had received the entire consideration? Now, no one will question the statement that the rights of Gaston & Ayres cannot be made to depend on the disposition made of the proceeds of the note by Clark.

We come, therefore, to the question, Shall the rights of the parties and the right and justice of the case be made to depend on the mere form the transaction took or the apparel in which it was clothed? We cannot think so. The law ever pays but scant respect to mere appearance, but should 'and does give its first attention to the realities and very truth of every transaction. Holding these views, it results that having the right to borrow money and having obtained on its note the money of these plaintiffs in error who were in the transaction, without blame or fault, the company must under the law, and should as a matter of right, repay them. We agree with the trial court and the Court of Civil Appeals that there was no legal evidence raising the issue that the sum paid T. W. House was or that the sum should be treated as the funds of I. L. Campbell. The transaction in its inception and until the note was given and guaranteed was the

act and business for the benefit of the company, and must be treated as such.

[5] No mere entry, subsequent thereto, on the books of the company, can change its character, or alter or affect the rights of the parties.

It is therefore, ordered that the judgment of the Court of Civil Appeals be, and the same is hereby, reversed, and the cause is remanded, with instructions to the district court to render judgment in favor of Gaston & Ayres for its full amount of the note sued on and for all costs.